years is in my can't end and and and up so bear with me just a moment of adjustment here time marches on i suppose okay please the court uh... good morning your honors best uh... very best wishes judge lori uh... who i understand is listening in for a for a for a speedy recovery judge so our patent system uh... has as many objectives but one of the primary objectives is not just to protect the interests of the inventor or the patent holder mister minnemeyer in this case another important interest is to protect uh... those of the competitors in the marketplace in this case my clients mister and missus lundeen and their co-defendants and as importantly the public that objective failed in this case for two primary reasons you've seen the arguments in our brief your main argument seems to be that uh... novelist the biosig uh... uphold stark case uh... represented a sea change in the law uh... such that you couldn't raise the defense of indefiniteness until two thousand fourteen uh... we present that as our second argument your honor but it is it is uh... equally compelling uh... and i agree it i think novelist absolutely uh... represents a sea change what case support do you have where we allowed a party to assert for the first time into a seven year litigation the defense of indefiniteness based upon novelist uh... uh... your honor i believe you said on the dow chemical panel uh... in my reading of the dow chemical case is that issues of claim preclusion rescue the car and log the case do not apply on facts such as these dow chemical had nothing to do with lead to a man but it was about whether in light of novelist we were bound by our decision in a previous pre-novelist appeal that claims were not indefinite uh... your honor i think the legal uh... the overriding legal issue of a substantial uh... change how can you say dow chemical applies when RBOC never once presented any indefiniteness defense until seven years into the litigation and two years after the first trial had already run uh... indeed we initially uh... did present and that was that was brief to the lower court but i think for the purposes of appeal uh... the point is that immediately after wait a minute go backwards indeed we did initially uh... present uh... i'm sorry we we pled indefiniteness and then we withdrew it as we moved on in the proceedings uh... within two weeks as we said in our brief judge wallach uh... of the supreme court's decision in novelist uh... we filed for a move uh... move from we moved for leave to amend our contentions our expert report we did something else though we also filed a motion for summary judgment that the magistrate judge granted uh... briefing schedule on and considered uh... finding abuse of discretion under a district court's application of local rules is a pretty high bar when it comes to a a proposed amendment admittedly it is a high bar one of the hallmarks of abuse of discretion is a misapplication of the law and on that count we think uh... the magistrate got it wrong do you have a case where on the issue of do you have a case where a party waited seven years uh... in into litigation to raise an indefinite defense and and and was allowed to amend uh... i i i don't have a case uh... you knew it was possible because you say you initially started with it and then abandoned it uh... we did but we're also uh... presenting those arguments at the time on indefiniteness and considering them your honor in the context of the law as it existed at the time so yes novelist was a sea change uh... with respect to the abuse of discretion standard uh... we cited the law that this court will apply the law of the regional circuit on issues of law that are to be considered de novo waiver is one of those issues and we think the magistrate judge uh... got the issue of waiver wrong on a an incredibly important issue here just out of curiosity is it our BOC or ARBOC? it's ARBOC i'm sorry i didn't want to correct you in fact when you first started your honor i was i was considering is that an acronym for a post-dow case that i should be aware of so did why did ARBOC ever stipulate to the approximately perpendicular uh... claim to mean approximately ninety degrees uh... in lieu of a markman hearing? yeah and to be fair to Mr. and Mrs. Mondeen they're here today they didn't stipulate to it i stipulated to it uh... at the time well you are them i am then of course i am i stand in their shoes uh... in in in looking at the context of claim twelve of the numerous uh... what we are calling the applicable terms that appear in the glossary uh... i can give the citation and i will in a moment uh... perpendicular we do understand uh... to be ninety degrees that's that's the reference point uh... but there was there is uncertainty throughout the record we cited in the brief to the testimony of Mr. Minnemeyer himself uh... where he said uh... when i question him on it at his deposition then at trial of Minnemeyer 1 i note that your honors uh... Newman and Wallach sat on the panel back in twenty thirteen i remember it for for our first go-round these are these are significantly different circumstances of course we're dealing with a redesigned product here uh... and we want to foster the concept of uh... redesign in in in competition uh... but to the point Mr. Minnemeyer's response to my question at trial uh... what is approximately perpendicular uh... the magistrate judge identified Mr. Minnemeyer as one of ordinary skill in the art the skilled artisans testimony was uh... good question probably not a lot past five degrees not surprising the design specification for Mr. Minnemeyer's own Lausanne product which is the commercial embodiment in this case i seem to recall references to eighty degrees that there are and let me cite to a footnote that at least i have used the disreported we are speaking in terms of complementary angles we did so throughout the proceedings below and i think you'll see in in in the briefing uh... use of complementary angles is is replete uh... in footnotes we include the explanatory uh... complementary angles are easily reconciled because the sum of the two always equal the right angle not ninety degrees here so to flip it uh... Mr. Minnemeyer's testimony would have been translating it would have been good question uh... you know not not a lot past eighty five degrees uh... not a lot less than eighty five degrees because we're flipping it uh... he went on he said you start getting i seem to recall seeing eighty and a mention of seventy uh... i'm sorry you're recalling from the twenty thirteen Minnemeyer one uh... i think i'm recalling from the record here so so perhaps the points of reference if i may use the complementary angles as we did and and the magistrate judge uh... five degrees was the design specification and the undisputed measurement of Mr. Minnemeyer's Lausanne coupler i think we better touch on TiVo uh... TiVo so uh... right out of the chute in the magistrate's seventy two page opinion uh... he expressed his uh... how can you argue that the court used the incorrect test to determine continued infringement from TiVo when the court expressly performed both prongs of the TiVo analysis i don't agree that uh... i agree your honor that the court said it recognized the law under TiVo uh... the first thing the judge did was express confusion as to why you need to reach the issue of infringement once uh... there has been a finding that a redesigned product is no more than colorably different from an originally adjudicated infringing product of course in this case we're talking about the original BNC coupler versus the redesigned uh... BNC coupler uh... appendix page forty nine i'd call uh... the court's attention to that uh... the court quotes uh... in speaking of the two pronged TiVo test therein lies the rub because in case after case the federal circuit also tells us that when differences between devices are merely colorable that means they are essentially the same which in turn means the collateral estoppel applies and a finding uh... a finding of infringement i don't have my glasses on is appropriate close quote an argument embraced throughout the proceeding below by our colleagues representing Mr. Minnemeyer i do not agree that that is the standard it is certainly not the standard post TiVo on the next page appendix page fifty the court went on uh... in expressing how it was perplexed so let's talk about fifty and fifty one yes the uh... the blue brief uh... at fifty one and fifty two suggests that the district court improperly considers subjective intent and state of mind and uh... when it is part of its analysis uh... uh... citing to fifty one fifty and fifty one in the J.A. where the district court says if changes were made to the angles of the threads they seem for the most part unintentional and that our block executives did not even know any such changes were made to the thread angles uh... in the red brief uh... it points out that those are only partial quotes from the district court's determination that weighed the credibility of both parties witnesses testimony and i looked and indeed they are only partial quotes uh... do you still allege looking at the entire language I've got all underlined do you still allege the district court imported some type of intent element uh... based on what is cited and what I understand to be fifty and fifty one of the blue book imagine your honor fifty one and fifty two of the blue brief I didn't want to confuse you that's why I was trying to fifty and fifty one of the record uh... based on not just what is cited on this page but elsewhere in our brief and elsewhere within appendix forty nine through fifty six which is the purported infringement section it's the infringement section of of uh... the district court's analysis uh... it is it is very clear that the court considered intent it spoke of haphazard uh... uh... arrangement there's reference elsewhere your honor uh... and perhaps I may not be able to queue myself up to it right now on the fly but I will certainly do so. I'll bet your opposing counsel will help you uh... perhaps that is one of the several several assignments of error uh... the further point the court made about the conundrum uh... my term not the court's the Tebow conundrum so if this line of cases again referring to the federal circuit authority all two thousand eight pre-Tebow cases tells us that a device that is no more than colorably different from a device also found to infringe uh... why then does Tebow require a second step uh... of analysis after the no more than colorably different uh... which the court reached in this case relative to the first uh... two the answer is we don't know and while we suspect the issue of infringement has been settled that is the district court is saying uh... it suspects the issue of infringement has been resolved by virtue of the first prong of the test but that is precisely what Tebow uh... was designed to change there still must be a finding under two seventy one of infringement in this case importantly your honors it has to be literal infringement why as in Minimeyer one in Minimeyer two Mr. Minimeyer expressly waived reliance on the doctrine of equivalence uh... why does Tebow require the separate analysis infringement after a finding of essential sameness which is the terms that my colleagues used in the proceedings below uh... perhaps an analogy if there is a bicycle wheel with twenty eight spokes that's the original product and you have a redesigned product that's the same bicycle wheel or it's a bicycle wheel with thirty two spokes they may be essentially the same under the colorable differences analysis are they used for the same purpose certainly I put it on the front or the rear of my bicycle uh... are they used to support someone in uh... a vehicle in motion with PELS yes they are uh... however when you get to the issues that matter in a patent infringement case which is how do the claim terms as construed apply to the accused product you're not you're not comparing products there you're comparing claim language uh... to accused product it can be all the difference in the world because the claim may specify a a bicycle wheel uh... wherein there are twenty eight spokes that that's why the distinction is important we argued exhaustively on that point to the district court it it seemed to be lost on the court it certainly was on our colleagues they literally argued throughout trial in their post trial we've cited uh... their excerpts to you that you don't need to reach the second prong of TIVO uh... upon a finding of colorable differences uh... it's a critical difference uh... some of the specifics let's hear let's hear where do your rebuttal time so we'll save the rebuttal but let's hear from the other side thank you your honor I apologize was I over time I was showing I had thirty five seconds you were thirty five oh I'm sorry about that he can take my time I'm sure I won't use it all up Mr. Chalmers may it please the court why don't you start elucidate for your uh... opposing counsel what the court actually said fifty and fifty one in the appendix well in fifty and fifty one the court was it just doesn't look like to me like he imported intent importing intent well there is a great deal of intent in the case generally because of course the court found they had a global credibility problem they lied about almost everything of any importance and uh... I mean it's saying that it was like Cronus' good luck piece by happenstance there is an element of I think if he imported anything it was sarcasm oh without without doubt and the absurdity of it was what impressed the court more than anything and that's the tone he took in his opinion because these arguments would come out of nowhere with no evidence to support them no documentary record uh... admissions contrary to the current argument uh... you know the prior verdict the claim construction being stipulated and then evaded try to circumvent that constantly so they all of these things that the court I think looked at with some hostility and certainly played into its triple damage and fees award at the end so I can't blame the judge for not compartmentalizing all of these things uh... a hundred percent however when it comes to Tevo there's no doubt he followed the letter of the law on that case because sure he had collateral estoppel uh... based on no colorable differences something they don't appeal here uh... that would be the Halco line of cases and the others he cites for that I don't think Tevo reversed that line of cases at all in fact in footnote four of the Tevo case it says the court's free to employ any traditional means of proof that are available such as collateral estoppel but then he went on and did it anyway and in 50-51 is exactly where he kind of summarizes that although there are other parts in the opinion where he talks about infringement but he takes four basic approaches to it one is the common sense approach that says you know we had an infringing product at the first trial there were no changes so just a matter of common sense this one infringes too uh... then he also does the colorable difference uh... applies that nonetheless then he goes on and compares Kaiser's testimony he doesn't quote it all in his opinion we give it to the court in our brief where Kaiser says 75 is approximately perpendicular just like 80 was the first one. That's what I was recalling, yes. Yes so the whole premise of the second trial was that they they wanted to say it was 80 versus 75 and they couldn't explain how it changed but it did the only change really was a new expert who remeasured stuff because they were always that in that range and the court then gets down and compares Mr. Kaiser our guy on 75 he says it's approximately perpendicular their guy Mr. Krajewski who makes the product you know this is it by the way it's nothing nothing technologically special uh... but Mr. Krajewski the guy who molded it he said whatever it's approximately perpendicular at 75 and then they the court contrasts that with their expert Dr. Storis uh... who was in you know in the clouds, head in the clouds and wasn't dealing with the product or the claim language approximately perpendicular so I don't know how anybody could read the court's opinion and somehow say that he flubbed TiVo uh... now couple things I noticed from the first part of the argument here uh... the court was interested to know why they stipulated a claim construction approximately 90 degrees that was that was something of a gift uh... they could have contested that then and maybe at that point Minimeyer's testimony about what his product was at could have been relevant there are cases though that say inventor testimony irrelevant to claim scope so we would have had that fight and maybe we would have pegged it at 75 or 60 which is a standard thread 60 degrees uh... but we didn't do that and so uh... neither did the jury the first time around say it's 80 and no less and the judge notices that too so obviously you're dealing with plastics you're dealing with uh... the width of a human hair on these things and so all things considered 75 infringes and that's his independent uh... supported opinion and I think it would be awfully hard to say that he clearly earned it in making it nautilus uh... that may be the primary argument honestly but it's not I thought it was that they put some effort into it they put some effort into it uh... but the court's right there's no support for it in Dow that was a totally different situation I don't even see the issue as one of a waiver because the court used that term and they key on it but all the court was doing was saying uh... you know look you you raised it you abandon it and now you want to bring it back because it's but I don't see the landscape is changing your arguments all involve the old cases before nautilus whether the test was was the old test or the new test I don't see a different result no and certainly even if you were to reach the merits of it it's not it's got approximately perpendicular there's a firm end on there but anyway that's a moot question too because I think as we know in the briefs once the color difference question is settled then that cuts out these defenses including this nautilus defense so it really doesn't get them anywhere at the end of the day since they don't appeal colorable differences they're stuck that's all I have unless there are additional questions you might need to have my rebuttal time thank you for the uh... rebuttal time counsel so uh... a couple of points uh... on the issue in the refrain that we hear that nothing changed between the original coupler and the redesign uh... first of all we have to focus on the issues at Barr and Minameyer too certainly something changed because by Mr. Minameyer's own admission he dropped assertion of claims two three and four of the seven two six patent and the reason is and I would direct uh... the court's attention to page nineteen uh... of our main brief uh... may I hold this up uh... this has an image that contrasts the trial exhibits it's in your brief isn't it? It is your honor it's page nineteen of uh... of our main brief the blue book uh... the upper coupler is a cross section or half section if you will of the BNC redesign that's at issue in Minameyer 2 the lower of the two images is a half section the cross section of the original BNC coupler at issue in uh... Minameyer 1 uh... you will see reference with our annotation to a sealing surface that's a smooth annular uh... seal ring that appears on either side of what is called the raised center stop that came out between the two products that is a critical distinction colorable differences talks about a product to product comparison in that respect you do look at the old and the new uh... it's hard to claim that the redesigned product is the very same as the original product when Mr. Minameyer had to drop his assertion of claims 2, 3, and 4 each of which is addressed to that smooth sealing surface you see it's no longer there the other critical point and this comes uh... we will arrive at what is relevant to this case which are the thread angles uh... the approximately perpendicular approximately ninety degree limitation you'll see that the raised center uh... center stop of the original coupler is much wider and so when you take the additional width of the center stop with those sealing surfaces and then look right up above to the redesigned product what would appear there additional threads this notion that there were not additional threads cut into the core inserts which are the internal part of the mold that create these uh... it is a preposterous theory and yet that was the refrain that we heard at trial nothing has changed about these by the way uh... the only thing that changes is a new expert uh... the insinuation from my colleague that we just got a new expert who came up with these magical seventy five degree measurements the first measurements we had in the case came from steven kaiser mister minimizer's expert witness every single one of his hundred and twenty six discrete measurements not of the old product of the new product averaged seventy four point six five degrees of course something changed mister kaiser admitted at trial that the threads that he measured were the three threads closest to the center stop on either side what does that mean based on the uh... clear construction the clear structure of each of these he was measuring threads that were newly cut that didn't even exist uh... on the core inserts used to manufacture the original products and on that count uh... there is no dispute the measurements are seventy five degrees i think when you look at the district court's portion uh... the infringement analysis uh... they accept that seventy five degrees is the measurement uh... okay we need to wrap it up with your last advice we've exhausted the time, is there anything you need to direct us to particularly if it's in your brief that we can concentrate on there is your honor in our brief and in the appendix uh... we list uh... we assign about seven points of error uh... plastic parts with a construed plan construction uh... pages uh... appendix fifty one through fifty six there is a lengthy excerpt of mister kaiser's trial testimony where the district court highlights it gives us a road map uh... for the legal error on the application of the literal infringement analysis he focuses on as i said uh... manufacturing tolerances they don't appear any... we're not redoing the jury verdict you understand no no i i understand i'm talking strictly about the the court's application of the legal test for literal infringement uh... and and uh... if the result stands if the judgment stands uh... it's it's bad for competition uh... it's terrible for my clients in this case and it's bad for the public the court uh... misapplied the literal infringement test didn't apply at all as we say in pages uh... thank you we will take it all into consideration thank you your honor